IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THERESA R. HUNTER                                                                                                   PLAINTIFF

v.                                                  CASE NO.          11-2211

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                          DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.   **Procedural Background:**

The plaintiff filed her applications for DIB and SSI on May 18, 2009 (T. 119), alleging an onset date of December 1, 2007, due to plaintiff's Back Problems, Asthma, and Anxiety (T. 144). Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on April 29, 2010.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 37 years of age and possessed a 9th Grade Education (T. 148).  The Plaintiff had past relevant work ("PRW") experience as a

CNA (T. 145).

On December 7, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's morbid obesity, mild degenerative disk disease, asthma/COPD, panic disorder with agoraphobia, borderline intellectual functioning (BIF), and history of polysubstance abuse in remission did not meet or equal any Appendix 1 listing. T. 14. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to sedentary work with additional restrictions. T. 15. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupations such as production and assembly worker. T. 19.

## II.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.  Discussion**:

The Plaintiff contends that the ALJ erred A) in considering certain opinion evidence of the consultive examiners; B) in his RFC assessment;  C) in his credibility determination;  and D)

did not properly consider her obesity limitations.

## A. Opinion Evidence

### 1. APN Pham-Russell

The Plaintiff first contends that the that APN Pham-Russell is not an acceptable medical source. The Plaintiff argues that "we have a CE exam which purports to be from Dr. Rebecca Floyd, which is found at 2F. T.205-20S. A review of 2F which purports to be a CE from Dr. Rebecca Floyd, M.D. reveals that the examination was not in fact performed by a medical doctor. The medical exam was performed by Maria Pham-Russell, APN, nurse practitioner. Dr. Rebecca Floyd's name is stamped on the examination. The Plaintiff submitted an Affidavit at 10E, T. 191, which reflects that the Plaintiff did not see a medical doctor but only a nurse practitioner.

Even if the court believed that APN Pham-Russell was not part of a team approach her opinion could be considered by the ALJ as an "other source".  Other sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2007). Therapists and nurse practitioners are specifically listed as "other" medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work. Id. §§ 404.1513(d)(1), 416.913(d)(1).  *Lacroix v. Barnhart*  465 F.3d 881, 887 (C.A.8 (Iowa),2006).

APN Pham-Russell conducted objective testing on the Plaintiff and recorded her observations of the Plaintiff. There is no evidence that any of her testing methodology or her observations were not performed appropriately.  The court finds that the ALJ committed no error in his use of the test performed by APN Pham-Russell.

### 2. Consultive Exams

The Plaintiff argues that the ALJ should not give weight to the consultive examination by Dr. Hoang (T. 198-204) and APN Pham-Russell (205-209) because they did not have access to medical records that were not made part of the record until after their respective examinations. (ECF No. 11). The medical records obtained by the Plaintiff and submitted on June 2, 2010 contain ER visits by the Plaintiff for the flu (T. 324), eye pain (T. 319), tooth ache (T. 314), cellulitus (T. 309), nausea (T. 307), insect bite (T. 303), and flank pain (T. 298). The Plaintiff does not state, nor has the court been able to determine, that any of these records could have had any conceivable impact on the objective evaluations performed by Dr. Hoang and APN Pham-Russell.

The court finds that the ALJ committed no error in his reliance on the consultive examinations performed by Dr. Hoang and APN Pham-Russell.

## B. Residual Functional Capacity

The ALJ found that the Plaintiff had the RFC to perform sedentary work except that she could perform only occasional climbing of ramps and stairs and was unable to climb ladders, ropes or scaffolds and that she could only occasionally balance, stoop, kneel, crouch and crawl; that the Plaintiff had to avoid moderate exposure to extremes of cold and heat, humidity, wetness, fumes, odors, dusts, gases and poorly ventilated areas and that the Plaintiff was unable to drive or have contact with the general public, but was capable of simple tasks with routine supervision and superficial contact with co-workers and supervisors and which is incidental tot he work performed. (T. 15).

### 1. Credibility

The Plaintiff contends that the ALJ committed error in discounting her credibility. (ECF 11, p. 15). The ALJ found that the Plaintiff's "statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessments". (T. 16).

The Plaintiff testified that if she stood for more than 30 minutes her back "hurt" and that she could only stand for "less than two hours" in an eight hour day. (T. 34). She also testified that she could not sit straight and she has to prop her feet up or her legs will swell. (T. 34-35). The Plaintiff also testified that she had difficulty in breathing and that the weather affected her ability to breath. (T. 42).

The Plaintiff listed asthma as one of the grounds for her disability (T. 144). The ALJ found that while Plaintiff had been diagnosed with asthma, her condition was controllable with appropriate treatment and medication (Tr. 16). Specifically, the ALJ cited to the fact that Plaintiff's pulmonary function study showed Plaintiff showed considerable post-bronchodilator improvement, which suggested that medications are effective in treating her condition (Tr. 16, 249-252). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987). When the Plaintiff was examined on June 24, 2009 by APN Pham-Russell she noted that her breathing sounds were normal and there was no wheezing (T. 206).

The ALJ also noted in this regard that Plaintiff continued to smoke despite her complaints regarding shortness of breath (Tr. 16). The ALJ correctly stated that the fact that Plaintiff continued to smoke indicated that Plaintiff's symptoms were not as severe as alleged (Tr. 16, 43).

The Plaintiff initially testified that she smoked about a pack of cigarettes[1] every two days but then said she only smoked two cigarettes per day. She acknowledged that she had smoked since she was 14 years old. (T. 43). When the Plaintiff was seen in the Sparks ER in September 2008 for chest pain it was noted that she "uses tobacco products regularly". (T. 230). *See Kisling v. Chater,* 105 F.3d 1255, 1257 (8th Cir.1997) (impairments that are controllable or amenable to treatment, including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including the cessation of smoking, without good reason is grounds for denying an application for benefits).

The ALJ commented on the Plaintiff's activities of daily living in that she cared for an infant child (two year old), could perform all aspects of personal care (T. 163), did limited house work, was able to drive (T. 164), and shop but preferred to shop at smaller stores (T. 263). The Plaintiff also testified that she had six children but five were taken away by DHS "'cause their dad was on drugs" (T. 47) not because she was unable to care for them.

These activities do not support plaintiff's claim of disability. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

---

[1] In the United States of America, the quantity of cigarettes in a pack must be at least 20.

The ALJ also noted that the Plaintiff only worked sporadically prior to the alleged onset date of disability. It does not appear that the Plaintiff had substantial gainful employment except in 2000 and 2001 (T. 132-133). An ALJ may consider a claimant's work record in his credibility analysis. *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ may consider that a claimants sporadic work record reflecting relatively low earnings and multiple years with no reported earnings that showed a lack of motivation to return to work).

The ALJ also noted the Plaintiff failure to obtain treatment. A review of the record shows that the Plaintiff made ten trips to the emergency room for treatment of various minor problems but it does not appear that the Plaintiff ever obtained treatment for the pain in her back or legs, nor did she ever seek any kind of mental health treatment. (T. 221, 225, 236, 242, 298, 307, 309, 314, 319, and 324).

It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). *Id*.; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

It is also true that Plaintiffs's attempts to excuse her failure to pursue more aggressive treatment cannot be wholly excused due to her claims of financial hardship. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the

Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). *Tate v. Apfel* 167 F.3d 1191, 1197 (C.A.8 (Ark.),1999).

"If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006). The court finds no error in the ALJ's discounting the credibility of the Plaintiff's assertions.

**2. RFC Determination**

The Plaintiff had no consistent treating physician. As noted above, when necessary, she appears to have gone to a local emergency room for various complaints but was never treated for any of the impairments that she contends are disabling. The ALJ properly order a Consultive Examination by Dr. Hoang and APN Pham-Russell. Both of those exams revealed the Plaintiff to have a normal range of motion with no physical limitations but, because of her obese condition, bending, stooping, and prolonged walking were noted to be difficult. (T. 208). The Plaintiff admitted that she lived on a second floor apartment and had to "take my 2 year old up and down the stairs a lot". X-rays showed only mild degenerative arthritic changes around the knees (T. 258) and the spine (T. 209). A physical RFC assessment by Dr. Payne on July 31, 2009 found the Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently; she could stand for at least 2 hours in an 8 hour day and sit for six hours. (T. 213). Dr. Payne found no Postural Limitations. (T. 214). Dr. Payne's findings were reviewed and affirmed by Dr. Takach on September 17, 2009. Dr. Hoang saw the Plaintiff again in June 2010 and found her limitations to be Moderate (T. 257).

The Eighth Circuit Court of Appeals has upheld the Commissioner's RFC assessment in

cases where the ALJ did not rely on a treating physician's functional assessment of the claimant's abilities and limitations. *See Page v. Astrue*, 484 F.3d at 1043 (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC finding); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records).

The Plaintiff argues that the "ALJ should have sought further clarification from the Plaintiff's doctors, particularly the treating physician who deemed him totally and completely disabled". (ECF No. 11, p. 12). The Plaintiff does not direct the court to the specific medical record and the court has searched the record diligently and can find no treating physician that made such a diagnosis or evaluation. This argument is without merit.

### 3. Obesity

The Plaintiff argues that the ALJ erred "as it relates to obesity" and a claim that the ALJ failed to apply SSR 02-1p in evaluating the severity of the Plaintiff's obesity. (ECF No. 11, p. 18).

Social Security Ruling ("SSR") 00-3p, states that obesity is a "medically determinable impairment" that can constitute a severe impairment under Listing 12.05C, and reminds adjudicators "to consider [obesity's] effects when evaluating disability." SSR 00-3p, 65 Fed. Reg. 31,039, 2000 WL 33952015 (May 15, 2000).

The ALJ specifically found that Plaintiff's morbid obesity constituted a severe impairment (T. 13) and that her physical impairments in combination with obesity warranted a reduction in

the residual functional capacity to the sedentary exertional level with additional postural impairments (Tr. 16-17).

There is no question that the Plaintiff has a Level III obesity rating because she is 4 feet 11 inches tall and weighs in excess of 300 pounds.  As a result her BMI is greater than 40.  The regulations however provide that "These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss. (See SSR 02-1P, p. 2).

The RFC assessment by the non-examining doctors placed no postural limitations on the Plaintiff. (T. 214).  Here, the ALJ specifically stated that he considered Plaintiff's obesity, and then he found that Plaintiff's residual functional capacity should be reduced to the sedentary level with additional postural limitations (Tr. 15 [Finding 5], 17).

It appears to the court that the ALJ properly considered the Plaintiff's morbid obesity and made proper allocation for that impairment in the RFC.

## IV.     Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this 10th day of October 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE